UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Athena J. Hale,

         Plaintiff,

  v.

Commissioner of Social Security,

         Defendant.

**Decision and Order**

18-CV-1379 HBS
(Consent)

## I. INTRODUCTION

  The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 5, pages hereafter cited in brackets), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 7, 11.) In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that she was not entitled to Supplemental Security Income under Title XVI of the Social Security Act. The Court has deemed the motions submitted on papers under Rule 78(b).

## II. DISCUSSION

  "The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether HHS applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.* "The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*" *Brault v. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citations omitted).

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous

work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry, supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the

3

physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Plaintiff objects to what she considers the ALJ's selective reading of the medical opinions on record. The ALJ found that plaintiff has two severe impairments: low back degenerative disc disease and obesity. [20.] After reviewing the record, the ALJ crafted an RFC of light work plus the limitations that plaintiff can occasionally climb ramps and stairs; never can climb ladders, ropes, or scaffolds; and can occasionally stoop, kneel, crouch, and crawl. [23.] In forming this RFC, the ALJ gave significant weight to two consultative examiners: psychologist Dr. Ashley Dolan, who performed a psychiatric evaluation on June 22, 2015; and osteopath Dr. Donna Miller, who performed an internal medicine examination on June 22, 2015. The ALJ made no qualifications about the assignment of weights to these two examiners, and plaintiff now questions why the ALJ overlooked certain findings that the examiners made:

> While finding that the Plaintiff is capable of "light work," the ALJ seemed to reject Dr. Miller's opinion that Plaintiff has mild to moderate limitations in carrying, pulling, and pushing, as the ALJ included no limitations in these areas. (*See* Tr. 19, 313). The ALJ also failed to render any non-exertional limitations, despite Dr. Dolan's opinion that Plaintiff has limitations in maintaining a regular schedule, making appropriate decisions, relating adequately with others, and appropriately dealing with stress. (Tr. 308). The ALJ does not reconcile her decision to not adopt the entirety of the medical opinions in which she assigned "significant weight," despite acknowledging the entirety of the opinions and their consistency with the record. (*See* Tr. 23).
>
> Additionally, Dr. Miller's opinion for limitations in the functional areas of carrying, pushing, and pulling is consistent with Plaintiff's hearing testimony. For example, Plaintiff testified that MRI results have showed that Plaintiff suffers from degenerative disc disease, herniated discs, and spinal stenosis. (Tr. 39). When she is doing the dishes, she has to take breaks every few minutes, as she needs to sit down to relax her back because it gets very stiff. (Tr. 43). As for doing the laundry, Plaintiff stated that she has to drag the laundry baskets because she cannot lift or carry them due to her back. (Tr. 43). When she sweeps her kitchen, she has to take about a 10-15 minute break, then she can go do the living room and the hallway, and

4

> then take a break and do the bedrooms. (Tr. 43-44). Plaintiff further testified that the heaviest weight she can lift is about 25 pounds. (Tr. 51). Even lifting a gallon of milk will cause pain in her back. (Tr. 55). While trying to lift things, Plaintiff's lower back pain will travel to her upper back. (Tr. 54). She also indicated that she cannot bend over without pain, and that she "can't reach all the way to the floor even if I tried." (Tr. 55). Reaching over her head additionally causes pain in her left shoulder. (Tr. 55). This evidence clearly denotes the limitations associated with carrying, pushing, and pulling that Dr. Miller opined. (Tr. 313). Even more so, the ALJ explicitly acknowledged that Dr. Miller's opinion "is consistent with the record as a whole." (Tr. 23).
>
> In relation to Dr. Dolan's opinion, Plaintiff testified that that it is impossible to do anything without pain, and that her anxiety also prevents her from being around other people. (Tr. 38). There are also multiple instances in which Plaintiff was diagnosed with depression, anxiety and ADHD. (*See* Tr. 427-428, 421-422, 417-418, 415). During the consultative examiner, Plaintiff even reported that she's had an anxiety attack a month prior. [sic] (Tr. 306).

(Dkt. No. 7-1 at 17; *see also* Dkt. No. 12 at 2–3.) The Commissioner responds that plaintiff had no mental health treatment during the relevant period, and that "when plaintiff saw her primary care practitioner, she repeatedly denied having psychiatric symptoms." (Dkt. No. 11-1 at 11.) The Commissioner argues that "Dr. Dolan's opinion was consistent with plaintiff's daily activities, which included performing child-care, doing household chores, and socializing with friends (Tr. 23; *see* Tr. 41, 43, 192, 307-8, 311). In fact, plaintiff specified that she drove her five-year old son to school (Tr. 41), took him to the pediatrician (Tr. 48), took him to the playground and the zoo (Tr. 48), attended meet-the-teacher night at her son's school (Tr. 46), went on a field trip (Tr. 46), and even went to the casino (Tr. 306). Plaintiff's activities indicate that she did not have significant limitations in her abilities to interact with others or perform simple tasks." (Dkt. No. 11-1 at 13.) The Commissioner argues further that "the ALJ relied upon a multitude of evidence to conclude that plaintiff could do light work, only one of which was Dr. Miller's opinion. While plaintiff claims that the ALJ 'seemed to reject' Dr. Miller's opinion that plaintiff had mild-to-moderate limitations in carrying, pushing, and pulling (Pl. Br. 16), the ALJ did not do so. Indeed, courts in this circuit have

5

found that mild and moderate limitations are consistent with an ability to do light work." (*Id.* at 15.)

This case presents a close call, but one important omission gives plaintiff the better argument for now. "If all of the evidence we receive, including all medical opinion(s), is consistent and there is sufficient evidence for us to determine whether you are disabled, we will make our determination or decision based on that evidence." 20 C.F.R. § 416.920b(a). "We will assess your residual functional capacity based on all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(3). Of the exhibits that the ALJ reviewed, a significant amount of information supports the RFC as determined. On April 13, 2013, plaintiff reported to an emergency room complaining of severe lower back pain. Plaintiff denied any loss of range of motion. [254.] Plaintiff wound up leaving without treatment. [255.] Plaintiff refused an administration of the NSAID Toradol because it "does not work." [255.] When the physicians informed plaintiff that they would not administer narcotics before trying Toradol, she "basically told me she is tired of getting treated like a drug seeker and got up and left and walked out." [255.] An examination on June 4, 2013 at Cuba Family Health Care showed that plaintiff's back pain was "mostly well controlled" with medication and that she was exercising sporadically with no pain or limitations. [256.] Plaintiff denied psychiatric symptoms. [256.] The back pain appears to have flared up about a month later even while taking Tramadol as prescribed, but plaintiff continued to deny psychiatric symptoms. [259.] Plaintiff had a normal gait and full bilateral range of motion. [260.] Plaintiff's back pain fluctuated for the better as of September 16, 2013, when plaintiff again denied psychiatric symptoms. [268.] Monthly visits continued; about a year later, on September 2, 2014, the situation remained the same: back pain present but under control; sporadic exercise; no pain or limitations; denial of psychiatric symptoms. [283.] The same status continued as of January 2016 and into June 2017. [349, 360, 375, 379, 409.] Plaintiff's consistent denials of psychiatric symptoms were consistent with Dr. Dolan's review that

plaintiff "has never been hospitalized for a psychiatric reason" and "is not currently receiving any treatment for psychiatric concerns." [309.] Dr. Dolan noted a tense mood and mild memory impairment but also average cognitive functioning with fair insight and judgment. [311.] Dr. Dolan concluded that plaintiff could follow and understand simple directions and could perform simple tasks independently. [312.] According to Dr. Dolan, plaintiff had mild limitations making appropriate decisions, relating adequately with others, and dealing with stress. [312.] As for Dr. Miller's physical examination, Dr. Miller noted that plaintiff was able to perform activities of daily living. [315.] Plaintiff had full range of motion and full strength in her extremities. [317.] Consistent with the record indicating sporadic exercise, no limitations, and pain that fluctuated but was more or less under control, Dr. Miller concluded that plaintiff simply had "mild to moderate limitations for heavy lifting, bending, carrying, pushing, and pulling." [317.]

Despite all of the above information, which the ALJ reviewed and cited in her decision, one exhibit in the record requires remand because it appears to have received no attention and casts some doubt on the completeness of the record and of the RFC. In 2012, plaintiff visited Jones Memorial Hospital at least five times. [421–36.] Each time, the visit was labeled as an acute or follow-up visit for depression. An entry for April 23, 2012 contains hints of an extensive psychiatric history: "The patient has a history of substance abuse, narcotic abuse, and alcohol abuse and that she was actually discharged from this office back when Dr. Hill was here, but we decided to give her a second chance." [434.] The same entry notes that plaintiff "has had troubles with depression in the past. The patient is not sure everything of which she has tried but she does know that she is try[ing] the Effexor and that did not work for [it] gave her a rash." [434.] The entry for May 16, 2012 makes reference to three different psychiatric medications and a concern about receiving narcotics for back pain "because of her history." [425.] The note for August 31, 2012 mentions

7

some details about stress, social anxiety, and an unspecified psychiatrist making recommendations about antidepressant medications. [421.] *See* 20 C.F.R. § 416.969a(c)(1)(i) ("You have difficulty functioning because you are nervous, anxious, or depressed" as one example of a nonexertional limitation). Together, the clinical notes from Jones Memorial Hospital—preserved in the record as Exhibit 11F—directly discuss and indirectly hint at a much deeper psychiatric history for plaintiff than her repeated denials to other providers would suggest. The ALJ appears to have had Exhibit 11F available to her; there is no mention in her decision of any attempt at a late submission. Yet the ALJ does not mention this exhibit in her decision at all, not even to downplay it. Did Dr. Dolan ever see Exhibit 11F? Perhaps not; her statement that plaintiff "has never been hospitalized for a psychiatric reason" [309] is not true unless limited to overnight admissions.

The Commissioner's point about focusing on records within the relevant period is understood. The complete absence of Exhibit 11F from the ALJ's decision, however, causes the Court two concerns: first, that the ALJ did not read it at all and did not even make a finding about relevant periods; and second, that the history mentioned in Exhibit 11F is of a potentially long-term nature that might affect the relevant period if the record were developed further. Dr. Dolan herself has hinted at the potential long-term nature of plaintiff's psychiatric condition when she found limitations—albeit mild ones—in making appropriate decisions, relating adequately with others, and dealing with stress. [312.] *Cf. Oaks v. Colvin*, No. 13-CV-917-JTC, 2014 WL 5782486, at *5 (W.D.N.Y. Nov. 6, 2014) (RFC affirmed where "the ALJ noted [the consultative examiner's] report indicating mild restrictions in the areas of maintaining attention, concentration, memory, making appropriate decisions, relating adequately with others, and appropriately dealing with stress").

The Court will leave to the Commissioner how to explore the issues raised in the Jones Memorial Hospital records and how those issues might require some mention of nonexertional

8

limitations in the RFC. *Cf., e.g., Henderson v. Comm'r*, No. 18-CV-00072, 2019 WL 3237343, at *8 (W.D.N.Y. July 18, 2019) (RFC affirmed where it addressed nonexertional limitations); *Mitch v. Colvin*, No. 15-CV-6180 CJS, 2016 WL 6695874, at *4 (W.D.N.Y. Nov. 15, 2016) (same). The solution here might be as simple as incorporating Dr. Dolan's limitations into the RFC, though the Court will not commit to that position at this time. The Commissioner will need to explore in some way, however, the extent to which the issues raised in the Jones Memorial Hospital records were confirmed by Dr. Dolan's findings of limitations and thus persisted into the relevant period.

### III. CONCLUSION

For the above reasons, the Court denies the Commissioner's motion (Dkt. No. 11). The Court grants plaintiff's cross-motion (Dkt. No. 7) in part to vacate the Commissioner's final decision and to remand the matter for further proceedings consistent with this Decision and Order. The Court denies plaintiff's cross-motion to the extent that it seeks any other relief.

The Clerk of the Court is directed to close the case.

SO ORDERED.

　　　　　　　　　　　　　　　　　__/s Hugh B. Scott_____
　　　　　　　　　　　　　　　　　Hon. Hugh B. Scott
　　　　　　　　　　　　　　　　　United States Magistrate Judge

DATED: March 13, 2020